IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JARROD PYLE, on behalf of himself and all others similarly situated | : : : | CIVIL ACTION |
| | : | FILED ELECTRONICALLY ON |
| Plaintiff, | : | FEBRUARY 2, 2017 |
| v. | : : | COLLECTIVE ACTION |
| VXI GLOBAL SOLUTIONS, INC. and VXI GLOBAL SOLUTIONS, LLC, | : : | JURY TRIAL DEMANDED |
| Defendants. | : : | |

## COMPLAINT

Plaintiff Jarrod Pyle ("Plaintiff") brings this collective action lawsuit against Defendants VXI Global Solutions, Inc. and VXI Global Solutions, LLC, seeking all available relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., and alleging the following:

## JURISDICTION AND VENUE

1.  Jurisdiction is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2.  Venue is proper under 28 U.S.C. § 1391.

## PARTIES

3.  Plaintiff is an individual residing in Massillon, Ohio (Stark County).

4.  Plaintiff is an employee covered by the FLSA.

5.  Defendant VXI Global Solutions, Inc. is a corporate entity headquartered in Los Angeles, California.

6.  Defendant VXI Global Solutions, LLC is a corporate entity headquartered in Los Angeles, California.

7.  Defendants VXI Global Solutions, Inc. and VXI Global Solutions, LLC will be referred to collectively as "VXI."

1

8. VXI is an employer covered by the FLSA because it employs individuals, including Plaintiff, engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person.

## VXI HAS PREVENTED PLAINTIFF FROM ARBITRATING HIS FLSA ON A COLLECTIVE BASIS

9. While employed by VXI, Plaintiff signed a "Mutual Agreement to Arbitrate" ("Arbitration Agreement") in which he agreed to arbitrate certain claims, including any "claims for wages . . . or any other form of compensation." Exhibit A at § 1. The Arbitration Agreement is silent regarding Plaintiff's right to bring such claims on a class or collective basis. See generally id.

10. On January 18, 2017, Plaintiff informed VXI that he intended to pursue his FLSA claim in arbitration on a collective basis.

11. On January 26, 2017, VXI informed Plaintiff that it would not allow Plaintiff to pursue his FLSA claim on a collective basis and that he was strictly limited to pursuing any legal claims on an individual basis on behalf of himself alone.

12. Since VXI will not allow Plaintiff to bring his FLSA claim on a collective basis, he is forced to commence this collective action lawsuit. Plaintiff submits that the FLSA gives him a statutory right to pursue a collective FLSA claim. In this regard, Eastern District of Michigan Judge David Lawson has held that, because workers have a statutory right to pursue FLSA claims on a collective basis, an employer cannot use an arbitration agreement to prohibit a worker from pursuing an FLSA collective action. See Gaffers v. Kelly Services, Inc., 2016 U.S.

Dist. LEXIS 112789, *12-30 (E.D. Mich. Aug. 24, 2016).[1]

13. In addition, as Southern District of Ohio Judge James L. Graham recently observed, the Nation's circuit courts are divided on the issue of whether the National Labor Relations Act renders unenforceable arbitration agreements that operate to prevent workers from pursuing claims on a class or collective basis. Schnaudt v. Johncol, Inc., 2016 U.S. Dist. LEXIS 132321, *23-31 (S.D. Ohio Sept. 27, 2016). The Sixth Circuit has not yet resolved this issue, see id., and the Supreme Court is poised address this issue in the current term.

14. Finally, the Arbitration Agreement is ambiguous regarding Plaintiff's obligation to pay half of all arbitration fees and costs. In particular, the Arbitration Agreement provides: "The Company shall pay the fees and costs of the arbitrator, *only as required by law*." Exhibit A at § 5 (emphasis supplied).[2] Plaintiff cannot afford to pay the thousands of dollars that an arbitrator would charge in presiding over and resolving his FLSA claim. As such, the possibility of fee-sharing effectively prevents Plaintiff from vindicating his statutory FLSA rights. See generally Morrison v. Circuit City Stores, 317 F.3d 646 (6th Cir. 2003) (*en banc*); see also American Express Co. v. Italian Colors Restaurant, __ U.S. __, 133 S. Ct. 2304, 2310-11, 186 L. Ed. 2d 417, 426 (2013) (vindication of rights doctrine might invalidate arbitration agreement where "filing fees and administrative fees attached to arbitration . . . are so high at to make access to the forum impracticable").

15. Based on the above, Plaintiff harbors a good faith belief that he is legally entitled to pursue his FLSA claim on a collective basis. Since VXI will not agree to collective arbitration, Plaintiff has commenced this collective action lawsuit in this Court.

---

[1] Gaffers currently is on appeal. See Sixth Circuit Case No. 16-2210.
[2] A more recent version of VXI's arbitration agreement (which Plaintiff has no record of signing) incorporates the AAA's Employment Arbitration Rules, which clearly require the employer to pay almost all arbitration costs and fees.

## FACTS

16. VXI operates call centers in California, Ohio, Texas, Arizona, and Georgia.

17. During the three-year period relevant to this lawsuit, VXI has employed at its call centers hundreds of employees who are paid on an hourly basis and whose duties include handling sales and customer service telephone calls on behalf of VXI's customers. These individuals hold various job titles and are referred to herein as "Phone Operators."

18. Plaintiff was previously employed by VXI at the Canton, Ohio call center as a Phone Operator from approximately September 2013 until approximately October 2014, at which time he was promoted to a salaried position.

19. The Phone Operator position is generally a "full-time" job. During many weeks, Plaintiff and other Phone Operators work (and receive payroll credit and compensation for working) 40 or more hours.

20. At the beginning of each shift, Plaintiff and other Phone Operators are required to arrive at an assigned work station, boot-up his/her assigned computer, and access various computer systems, databases, and programs. VXI does not give Plaintiff and other Phone Operators any payroll credit for time spent performing these activities.

21. Plaintiff and other Phone Operators are sometimes required to attend meetings at the beginning of the workday. VXI does not give Plaintiff and other Phone Operators any payroll credit for time spent attending such meetings.

22. During the course of the day, Plaintiff and other Phone Operators occasionally handle calls while logged out of VXI's timekeeping system. VXI does not give Plaintiff and other Phone Operators any payroll credit for such time.

23. Plaintiff, in the absence of discovery, currently estimates that he spent an average

of 10-20 minutes per day engaged in the uncompensated activities described in paragraphs 20-22. Because, Plaintiff and other Phone Operators often work (and receive payroll credit and compensation for working) 40 or more hours per week, the time spent performing the activities described in paragraphs 20-22 typically would qualify as overtime work if such time were credited and paid by VXI.

24. By failing to pay Plaintiff and other Phone Operators for overtime work associated with the activities described in paragraphs 20-22, VXI has acted willfully and with reckless disregard of clearly applicable FLSA provisions.

## **COLLECTIVE ACTION ALLEGATIONS**

25. Plaintiff brings his FLSA claim pursuant to 29 U.S.C. §216(b) as a collective action on behalf of all Phone Operators (as defined in paragraph 17) employed by VXI during any week within the past three years.

26. Plaintiff's FLSA claim should proceed as a collective action because Plaintiff and other potential members of the collective, having worked pursuant to the common timekeeping and compensation policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

## **COUNT I**

27. All previous paragraphs are incorporated as though fully set forth herein.

28. The FLSA requires that employees receive overtime premium compensation "not less than one and one-half times" their regular pay rate for hours worked over 40 per week. See 29 U.S.C. § 207(a)(1).

29. VXI has violated the FLSA by failing to pay Plaintiff and the collective any compensation for overtime work attributable to the activities described in paragraphs 20-22.

5

30. In violating the FLSA, VXI has acted willfully and with reckless disregard of clearly applicable FLSA provisions and, as such, has willfully violated the FLSA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and other members of the class/collective, seeks the following relief:

A. An order permitting this action to proceed as a collective action;

B. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all members of the FLSA collective informing them of this action and permitting them to join (or "opt-in" to) this action;

C. Unpaid wages, prejudgment interest, and liquidated damages;

D. Litigation costs, expenses, and attorneys' fees; and

E. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury trial.

Date: February 2, 2017

Respectfully submitted,

Peter Winebrake, Esq.
Winebrake & Santillo, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
(215) 884-2491

Jerry Martin, Esq. (*pro hac vice* anticipated)
Barrett Johnston Martin & Garrison LLC
414 Union Street, Suite 900
Nashville, TN 37219
(615) 244-2202

## CONSENT TO BECOME PARTY PLAINTIFF

I hereby consent, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), to become a party plaintiff in the accompanying FLSA action. I understand that I will be bound by the judgment of the Court on all issues in this case.

_____
Signature

Jarrod Pyle
_____
Name (Please Print Clearly)

# Exhibit A

## APPENDIX C
## MUTUAL AGREEMENT TO ARBITRATE CLAIMS

I recognize that differences may arise between VXI Global Solutions, Inc., (the "Company") and me during or after my employment with the Company and that those differences may or may not be related to my employment. I understand and agree that by entering into this Mutual Agreement to Arbitrate Claims (the "Agreement") both the Company and I anticipate gaining the benefits of the speedy, impartial dispute resolution procedure offered by arbitration.

I understand that any reference in this Agreement to the Company will be a reference to the Company and all of its past and present partners, officers, directors and employees; all subsidiary and affiliate entities, all benefit plans, the benefit plans' sponsors, fiduciaries, administrators, affiliates and all successors and assigns of any of them.

1. **Claims Covered by this Agreement**. The Company and I agree to resolve, by arbitration, all claims or controversies, except as excluded in paragraph 2 below, involving the Company and any of its past or present partners, officers, employees or agents, whether or not those claims or controversies arise out of my employment with the Company or the termination of my employment ("Claims"). The Claims covered by this Agreement include, but are not limited to, claims for wages, bonuses, commissions or any other form of compensation; claims for breach of any contract, express or implied; tort claims; claims for discrimination or harassment, including but not limited to discrimination or harassment based on race, sex, religion, national origin, age, marital status, physical or mental disability, medical condition or sexual orientation; claims for benefits, except as excluded in the following paragraph; and all claims for violation of any federal, state or other governmental law, statute, ordinance, Executive Order or regulation; claims by the Company for injunctive and/or other equitable relief for, among other claims, unfair competition, the use or unauthorized disclosure or misappropriation of trade secrets or client information, the disclosure of any other confidential information or the violation of any confidentiality agreement which may be in effect between me and the Company.

2. **Claims not Covered by the Agreement**. This Agreement does not apply to or cover claims by me for workers' compensation benefits or unemployment compensation benefits; claims based upon an employee pension or benefit plan, the terms of which may contain an arbitration or other dispute resolution procedure, in which case the provisions of such plan shall control.

3. **Required Notice of Claim**. If either the Company or I has a dispute which we wish to resolve, written notice of the dispute must be given to the other party within the applicable statute of limitations period on which the claim is based; otherwise, the claim shall be void and deemed waived. Written notice to the Company shall be sent by certified or registered mail, return receipt requested, to the attention of Eva Wang, VXI, Global Solutions, Inc., 3350 Wilshire Blvd, 3rd Floor, LA 90010.

Written notice to me shall be sent by certified or registered mail, return receipt requested, to the last address recorded in my personnel file. The written notice must identify and describe the nature of all claims asserted, the facts upon which such claims are based, the amount in controversy and the remedy sought.

4. **Arbitration Procedures**. The Company and I agree that, except as provided in this Agreement, any arbitration shall be conducted before an arbitrator who is a retired judge (the "Arbitrator"). The parties shall select an arbitrator that is mutually acceptable. The arbitration shall take place in or near the city in which I am or was last employed by the Company.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Federal Rules of Evidence shall apply. The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement, including but not limited to any claim that all or any part of this Agreement is void or potentially void.

The Arbitrator's decision shall be final and binding upon the parties, except as provided in this agreement.

The Arbitrator shall have jurisdiction to hear and rule on pre-hearing disputes and is authorized to hold pre-hearing conferences by telephone or in person as the Arbitrator deems necessary. The Arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.

Either the Company or I, at our own expense, may arrange for and pay the cost of a court reporter to provide a stenographic record of the proceedings.

Either the Company or I, upon our request at the close of the hearing, shall be permitted to file a post-hearing brief. The time for the filing of any such brief shall be set by the Arbitrator.

Either the Company or I may bring an action in any court of competent jurisdiction to compel arbitration under this Agreement and to enforce an arbitration award. **Except as otherwise provided in this Agreement, the Company and I agree that neither of us shall initiate nor prosecute any lawsuit or administrative action (other than an administrative charge of discrimination) in any way related to any claim.**

The Arbitrator shall render an award and opinion in the form typically rendered in labor arbitrations.

The Arbitrator's remedial authority shall be no greater than that which is available under the statutory or common law theory asserted. **The decision of an Arbitrator on any claim submitted to arbitration as provided in this Agreement shall be final and binding upon the Company and me.**

5. <u>Arbitration Fees and Costs</u>. The Company shall pay the fees and costs of the arbitrator, only as required by law. The Company will deposit such funds for the Arbitrator's fee, as the Arbitrator may determine to be necessary.

6. <u>Interstate Commerce.</u> I understand and agree that the Company is engaged in transactions involving interstate commerce and that my employment involves such commerce.

7. <u>Requirements for Modification or Revocation</u>. This Agreement can only be revoked or modified by a writing signed by all of the partners of the Company and me which specifically states intent by both of us to revoke or modify this Agreement.

8. <u>Sole and Entire Agreement.</u> This is the complete agreement between the Company and me on the subject of the arbitration of disputes (except for any arbitration agreement in connection with any pension or benefit plan). This Agreement supersedes any prior or contemporaneous oral or written understanding on the subject. Neither the company nor I is relying on any representations, oral or written, on the subject of the effect, enforceability or meaning of this Agreement except as specifically set forth in this Agreement.

9. <u>Construction</u>. If any provision of this Agreement is determined to be void or otherwise unenforceable, in whole or in part, such determination shall not affect the validity of the remainder of this Agreement.

10. <u>Consideration</u>. The promises by the Company and by me to arbitrate claims, rather than to litigate them, provide consideration for each other.

11. <u>Survival of Provisions</u>. This Agreement to arbitrate shall survive the termination of my employment and shall apply to any Claims whether they arise or are made during or after the ending of my employment or other relationship with the Company.

12. <u>Not an Employment Agreement</u>, This Agreement is not intended to, and shall not be construed to, change the at-will relationship, express or implied, which presently exists between me and the Company, and does not create any contract of employment between us.

 (CT)

# Mutual Agreement
# To Arbitrate Claims

The Company and I acknowledge that we have both carefully read this Agreement, that all understandings between me and the Company relating to the subject matter of arbitration are contained in it, that our respective signatures on this Agreement mean that both the Company and I are giving up our rights to a jury trial and to a trial in a court of law, and that we have both entered into this Agreement voluntarily and not in reliance on any premises or representations other than those contained in this Agreement. The Company and I further acknowledge that we have had an opportunity to discuss this Agreement with attorneys of our choice prior to signing it and we have used that opportunity to the extent we wish to do so.

The undersigned have signed this Agreement as of the date below.

EMPLOYEE:

_Jarrod B Pyle_
Print Name

_[signature]_  _9-30-13_
Employee Signature  Date

VXI Global Solutions, Inc.

_Eva WANG_  _Co-CEO_
Authorized Company Representative  Company Title
(Print Name)

_[signature]_  _____
Signature  Date