# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JARROD PYLE, on behalf of himself and all others similarly situated, | ) ) ) ) | CASE NO. 5:17-cv-220 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) | MEMORANDUM OPINION AND ORDER |
| VXI GLOBAL SOLUTIONS, INC., et al., | ) ) ) | |
| DEFENDANTS. | ) | |

Before the Court is the motion of defendants, VXI Global Solutions, Inc. and VXI Global Solutions, LLC, to compel arbitration and dismiss the complaint. (Doc. No. 16 ["Mot."].) Defendants argue that, in the course of his employment, plaintiff, Jarrod Pyle, signed an arbitration agreement, in which he agreed to submit any employment-related claim he might have against defendants to arbitration, and he is, therefore, precluded from bringing this collective action. Plaintiff opposes the motion, arguing that the Sixth Circuit's recent decision in *N.L.R.B. v. Alt. Entm't, Inc.*, 858 F.3d 393 (6th Cir. 2017) renders the parties' arbitration agreement unenforceable. (Doc. No. 18 ["Opp'n"].) Defendant has filed a reply (Doc. No. 20 ["Reply"]), and the Court permitted the parties to file supplemental briefs specifically addressing the applicability of the decision in *Alternative Entertainment*. (Doc. No. 26 (Plaintiff's Surreply); Doc. No. 28 (Defendants' Response to Plaintiff's Surreply).) For the reasons set forth below, defendants' motion to compel arbitration is granted.

## I. BACKGROUND

On February 2, 2017, plaintiff filed this collective action for relief under the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. §§ 201 *et seq*. (Doc. No. 1 (Complaint ["Compl."]).) In his complaint, plaintiff avers that between September 2013 and approximately October 2014 he was employed by defendants at a call center located in Canton, Ohio. (*Id*. ¶ 18.) During this time, and before he was eventually promoted to a salaried position, he held the position of Phone Operator. (*Id*. ¶ 18.)  He maintains that he and other Phone Operators were required to work more than forty (40) hours in any given week without receiving overtime compensation as required by federal law. (*Id*. ¶¶ 23-24.) By this action, plaintiff seeks to recover unpaid overtime allegedly owed to him, and he also seeks to represent a collective of all Phone Operators employed by defendants during any week within three years of the filing of the complaint. (*Id*. ¶ 25, Prayer for Relief.) To date, approximately 23 plaintiffs have filed opt-in forms giving their consent to join in the collective action.

In their motion to compel, defendants argue that the Court should enforce an arbitration agreement signed by plaintiff. According to defendants, plaintiff and defendants mutually agreed to submit any claim related to plaintiff's employment with defendants to binding arbitration. Specifically, the agreement, which is appended to the complaint, requires arbitration of all disputes, including any "claims for wages, bonuses, commissions or any other form of compensation[.]" (Compl., Ex. A (Arbitration Agreement ["Arb. Agr."]), § 1.) It also mandates binding arbitration for "all claims for violation of any federal, state or other governmental law, statute, [or] ordinance." (*Id.*) It is defendants' position that, given this broad contractual

2

language, plaintiff's single FLSA cause of action clearly falls within the purview of the arbitration agreement. Defendants further stress that this controlling arbitration agreement is silent as to the availability of collective arbitration, so this Court cannot find that the parties' agreed to classwide arbitration. (Mot. at 67.) Accordingly, defendants insist that plaintiff is required to submit his claim to arbitration and resolve it on an individual basis.

Plaintiff does not dispute that his FLSA claim is covered by the arbitration agreement, nor does he disagree that the arbitration agreement is silent as to class-wide arbitration. In fact, he admits both facts in his complaint. (Compl. ¶ 9.) Noting that Sixth Circuit law now provides that collective/class waivers in employment arbitration agreements violate the National Labor Relations Act ("NLRA"), he maintains that requiring him to proceed to arbitration on an individual basis would be illegal. (Opp'n at 100[1].) While he opposes defendants' motion to compel, he indicates that he would be willing to participate in collective arbitration proceedings, if defendants are amenable. (*Id*. at 101.) Defendants decline plaintiff's offer and maintain that classwide arbitration is not provided for in the agreement.

## II. LAW AND ANALYSIS

### A.    **Federal Law Favors Arbitration**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., manifests "a liberal federal policy favoring arbitration agreements[.]" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see Seawright v. Am. Gen. Fin. Servs*., *Inc*., 507 F.3d 967, 972 (6th Cir. 2007) (Section 2 of the FAA "'embodies the national

---

[1] All page number references are to the page identification number generated by the Court's electronic docketing system.

policy favoring arbitration and places arbitration agreements on equal footing with all other contracts.'") (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006)). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). All "doubts regarding arbitrability should be resolved in favor of arbitration." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.) Further, "the FAA preempts state laws and policies regarding arbitration." *Id.* at 393 (citing *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984)); *see also Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("the FAA preempts state laws applicable *only* to arbitration provisions") (quotation marks and citation omitted) (emphasis in original). Balanced against the clear policy favoring arbitration is the well settled principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *A T & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986) (quotation marks and citations omitted).

The Sixth Circuit applies a four-pronged test to determine whether an unwilling party can be compelled to arbitrate: (1) the Court must determine whether the parties agreed to arbitrate; (2) the Court must determine the scope of that agreement; (3) if federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and (4) if the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending

arbitration. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted); *see Javitch*, 315 F.3d at 624 (court must engage in a "limited review" to determine whether the dispute is arbitrable) (citation omitted).

### B.    The Sixth Circuit's Test for Compelling Arbitration is Satisfied

There is no question that the record facts satisfy the four-prong test. First, as set forth above, it is undisputed that the parties entered into an agreement to bring all employment-related claims, including all wage and hour claims and claims to enforce federal laws, to binding arbitration. Second, plaintiff concedes that his claim, which seeks to recover additional compensation for allegedly unpaid wages, falls within the scope of the arbitration agreement, which provides for arbitration of all claims involving "wages, bonuses, commissions or any other form of compensation." *See Rupert v. Macy's, Inc.*, No. 1:09CV2763, 2010 WL 2232305, at *5 (N.D. Ohio June 2, 2010) ("Given this clear language, there can be no doubt that all of Plaintiff's federal and state law 'employment-related claims' are covered by the arbitration agreement.") Third, it is well settled that FLSA claims, such as the one presented in plaintiff's complaint, may be subject to arbitration. *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000); *Smith v. BT Conferencing, Inc.*, No. 3:13-cv-160, 2013 WL 5937313, at *9 (S.D. Ohio Nov. 5, 2013) ("many courts have found that FLSA rights may be effectively vindicated in an arbitral, rather than legal, setting"); *Aracri v. Dilliard's Inc.*, No. 1:10CV253, 2011 WL 1388613, at *4 (S.D. Ohio Mar. 29, 2011) ("statutory claims may be the subject of an arbitration agreement, including claims under the FLSA") (collecting cases). As to the fourth prong, "[i]n cases where all claims are referred to arbitration . . . the litigation may be dismissed rather than merely stayed." *Rupert*, 2010 WL 2232305, at *4 (citations omitted). Here, the one and only

5

claim in plaintiff's complaint is undeniably subject to arbitration, making dismissal the appropriate disposition of the present litigation. *See, e.g., Wallace v. Red Bull Distrib. Co*., 958 F. Supp. 2d 811, 827 (N.D. Ohio 2013) (dismissing federal litigation where all claims were subject to arbitration). All four prongs, therefore, are met, and plaintiff offers no argument to the contrary.

Relying exclusively on the recent decision in *Alternative Entertainment*, plaintiff argues that the ruling "brings an end to Defendants' request that the Court order Mr. Pyle to proceed to individual—rather than collective—arbitration. Such an order would be illegal." (Opp'n at 100.) But plaintiff fails to recognize an important distinction between the facts surrounding that decision and the manner in which plaintiff's FLSA claim has presented itself.

C. **The Sixth Circuit's Decision in *Alternative Entertainment***

In *Alternative Entertainment*, the National Labor Relations Board ("NLRB") sought enforcement of its administrative decision that Alternative Entertainment had violated the NLRA by requiring its employees to agree to arbitrate all claims concerning or arising out of their employment individually. This action gave the Sixth Circuit the opportunity to weigh in on a circuit split over the question of "[w]hether federal law permits employers to require individual arbitration of employees' employment-related claims[.]" *Alt. Entm't*, 858 F.3d at 401. The Fifth and Eight Circuits have concluded that such agreements do not violate the NLRA. *Cellular Sales of Mo., LLC v. N.L.R.B*., 824 F.3d 772, 776 (8th Cir. 2016) (reaffirming *Owen v. Bristol Care, Inc*., 702 F.3d 1050 (8th Cir. 2013)); *Murphy Oil USA, Inc. v. N.L.R.B*., 808 F.3d 1013, 1018 (5th Cir. 2015) (reaffirming *D.R. Horton, Inc. v. N.L.R.B*., 737 F.3d 444 (5th Cir. 2013)).

The Sixth Circuit adopted the view, held by the Seventh and Ninth Circuits, that

arbitration agreements containing express class waivers violate the NLRA. *Id*. at 408 (citing *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 985-86 (9th Cir. 2016); *Lewis v. Epic Sys. Corp*., 823 F.3d 1147, 1160 (7th Cir. 2016)). While acknowledging the FAA's general policy favoring the enforcement of arbitration agreements, the Sixth Circuit noted that the FAA specifically provides an exception where "grounds exist at law or in equity for the revocation of any contract," a provision known as the FAA's savings clause. *Id.* at 400-01 (citing 9 U.S.C. § 2). Applying the savings clause, the court found that an arbitration provision expressly prohibiting collective actions interferes with the rights guaranteed under § 7 of the NLRA.

Section 7 states that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. The Sixth Circuit construed "other concerted activities" to include collective "resort to administrative and judicial forums" for the purpose of "achiev[ing] more favorable terms or conditions of employment[.]"[2] *Alt. Entm't*, 585 F.3d at 402-03 (quoting *Eastex, Inc. v. N.L.R.B.*, 437 U.S. 556, 565-66, 98 S. Ct. 2505, 57 L. Ed. 2d 428 (1978); *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011)). The court explained that "[t]he NLRA prohibits mandatory arbitration provisions barring collective or class action suits because they interfere with employees' right to engage in concerted activity, not because they mandate arbitration." *Id*. at 403. Therefore, the Sixth Circuit ultimately "join[ed] the Seventh and Ninth Circuits in holding that an arbitration provision requiring employees covered

---

[2] The Sixth Circuit also relied on federal law providing that "[c]ontractual provisions that 'illegal[ly] restrain[]' employees' rights under the NLRA are unenforceable." *Id*. at 401 (quoting *Nat'l Licorice Co. v. N.L.R.B.*, 309 U.S. 350, 360, 60 S. Ct. 569, 84 L. Ed 799 (1940)).

by the NLRA individually to arbitrate all employment-related claims is not enforceable. Such a provision violates the NLRA's guarantee of the right to collective action and, because it violates the NLRA, falls within the FAA's saving clause." *Alt. Entm't*, 585 F.3d at 408.

The Supreme Court has accepted certiorari in *Morris*, *Lewis*, and *Murphy Oil*, and will resolve this split of authority during the current term. In the meantime, the Court must decide whether the Sixth Circuit's decision has any bearing on the present motion. Defendants insist that the decision is distinguishable because, whereas the agreement in *Alternative Entertainment* contained an explicit waiver of the right to pursue collective arbitration, the present agreement is silent as to the availability of collective/class arbitration. According to defendants, the silence is important because requiring collective arbitration where the parties did not bargain for it would run afoul of existing Supreme Court and Sixth Circuit law. The Court agrees with defendants, and finds that the ruling in *Alternative Entertainment* does not invalidate the parties' agreement or require the parties to submit to collective arbitration.

D.      **Governing Law on "Silent" Agreements**

In *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010), the Supreme Court held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." (Emphasis in original.) Because class arbitration is such a change from bilateral arbitration, the Court found that authorization of class arbitration cannot be found in an agreement that is silent on that issue:

> An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it

8

by simply agreeing to submit their disputes to an arbitrator.

*Id*. at 685; *see also AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 347, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) (noting that the Court in *Stolt-Nielsen* held that an agreement, "which was silent on the question of class procedures, could not be interpreted to allow them" because classwide arbitration involves "additional and different procedures and . . . higher stakes") (quotation marks and citation omitted); *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 598 (6th Cir. 2013) ("Indeed, for several reasons, the [Supreme] Court has characterized the differences between bilateral and classwide arbitration as 'fundamental.'") (citations omitted).

Like the present case, the arbitration agreement before the Sixth Circuit in *Reed Elsevier*, did "not mention classwide arbitration at all." *Reed Elsevier*, 734 F.3d at 599. After concluding that the question of whether the arbitration agreement permits classwide arbitration was a "gateway matter" reserved for judicial determination, the Sixth Circuit found that the "[t]he principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it."[3] *Id*. at 599. A similar result was reached the following year in *Huffman v. Hilltop Cos*., LLC, 747 F.3d 391 (6th Cir. 2014). There, the court reaffirmed the ruling in *Reed Elsevier*, and found that an arbitration agreement that was silent as to classwide arbitration could not be used to force an unwilling party into class arbitration. *Huffman*, 747 F.3d at 398-99 ("As was also the case in *Reed Elsevier*, here the parties' arbitration clause nowhere mentions classwide arbitration. We therefore conclude that the arbitration clause does not

---

[3] The court offered, as a second reason, the fact that the clause "limits its scope to claims 'arising out of or in connection with any aspect of *this* Agreement." *Id*. (emphasis in original). Likewise, the parties' agreement here speaks only of disagreements between defendants and plaintiff regarding *his* employment. (Arb. Agr.)

authorize classwide arbitration, and hold that the plaintiffs must proceed individually.") (internal citation omitted).

The Sixth Circuit most recently revisited the issue in *AlixPartners, LLP v. Brewington*, 836 F.3d 543 (6th Cir. 2016). Once again, the court was faced with an arbitration agreement that was silent on the availability of class arbitration and, once more, the court emphasized that "[a]n agreement must expressly include the possibility of classwide arbitration for us to conclude that the parties agreed to [arbitrate]." *Id.* at 553 (citing *Reed Elsevier*, 734 F.3d at 600) (further citation omitted). In ruling that the plaintiff would have to proceed to arbitration on an "individual basis," the court relied on the fact that it could not presume consent to class arbitration from the parties "mere silence," as well as the language of the agreement that limited the impact of the arbitrator's decision to the parties to the agreement. *Id.* (noting that the arbitration agreement provided that the arbitrator's decision "shall be final and binding as to *both parties*") (citations omitted) (emphasis in original).

The court in *Alternative Entertainment* fails to even mention these recent Sixth Circuit decisions, let alone suggest that its ruling applies not only to arbitration agreements containing express classwide waivers, but also to those agreements that are silent on the subject. Indeed, in *Morris*, a decision upon which the court in *Alternative Entertainment* relied, the court specifically distinguished arbitration agreements with express waivers from silent agreements when it noted that "[u]nder *Stolt*, an arbitrator may not add to the terms of an arbitration agreement, and therefore may not order class arbitration unless the contract provides for it. This does not require a court to enforce an illegal term." *Morris*, 834 F.3d at 985 n.8 (citing *Stolt*, 559 U.S. at 684) (internal citation omitted). Under these circumstances, the Court must conclude that

the decision in *Alternative Entertainment* was not intended to apply to arbitration agreements that are silent on the issue of classwide arbitration and, therefore, do not contain an illegal term, such as an express waiver of the right to classwide arbitration.[4]

Instead, the Court finds the decision in *Reed Elsevier* and its progeny controlling. It is undisputed that the arbitration agreement makes no reference whatsoever to classwide arbitration, and the Court cannot infer the availability of such a vehicle based on mere silence. Moreover, the agreement speaks only in terms of matters relating to *plaintiff's* employment, and specifically states that "**[t]he decision of an Arbitrator on any claim submitted to arbitration as provided in this Agreement shall be final and binding upon *the Company and me*.**" (Arb. Agr. § 4) (bolding in original) (italics added). Inferring the right to class arbitration, which, as noted above, is fundamentally different from bilateral arbitration, would be especially

---

[4] At least two district courts have concluded that *Alternative Entertainment's* ruling does not extend to collective actions under the FLSA, even those involving arbitration agreements that specifically waive the right to collective arbitration. *Doe #1 v. Déjà Vu Consulting, Inc.*, No. 3:17-CV-00040, 2017 WL 3837730 (M.D. Tenn. Sept. 1, 2017); *Myers v. TRG Customer Solutions, Inc.*, No. 1:17-CV-00052, 2017 WL 3642295 (M.D. Tenn. Aug. 24, 2017). In *Déjà Vu*, the court found that the holding in *Alternative Entertainment* appeared to be limited to claims brought under the NLRA—"that is, claims concerning unfair labor practices that fall within the purview of the NLRB." *Déjà Vu*, 2017 WL 3837730, at *12. In support, the court noted that litigation in *Alternative Entertainment* was initiated by the NLRB, involved a "classic labor dispute," and sought the enforcement of a prior NLRB policy decision. *Id.* The district court further reasoned that:

> [I]t is not apparent . . . that a collective action under the FLSA qualifies as "concerted activit[y]" protected by the NLRA. The NLRA protects the right of employees "to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. While class or collective actions might qualify as concerted activities in some contexts, the language of the statute implies that the "other concerted activities" protected by the statute are activities related to collective bargaining and the achievement of "more favorable terms or conditions of employment." *Alt. Ent'mt*, [sic] 585 F.3d at 402. *Pursuing litigation for the purpose of requiring an employer to comply with federal law is not the same as seeking more favorable terms or conditions of employment by contract.*

*Id.* (emphasis added). The Court finds this reasoning persuasive. Because enforcing the provisions of the FLSA through a collective action does not constitute "concerted activit[y]" under the NLRB, defendants' motion to compel arbitration could be granted for this additional reason.

inappropriate in the present case where the arbitration agreement specifically contemplated "gaining the benefits of the speedy, impartial dispute resolution procedure offered by arbitration." (*Id.*, Intro., at 9.) The Court therefore concludes that the parties' arbitration clause does not authorize classwide arbitration, and holds that plaintiff must proceed to arbitration on an individual basis.

## III. CONCLUSION

For all of the foregoing reasons, defendants' motion to compel arbitration is granted in full. The parties shall proceed to bilateral arbitration before a neutral arbitrator in accordance with the parties' agreement. This case is dismissed.

**IT IS SO ORDERED**.

Dated: November 6, 2017

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**